UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JERARD (GERALD) WALKER,                     :
                              Plaintiff,    :
v.                                          :
                                            :
MICHAEL CAPRA, DSS THORPE, SORC             :
MANUEL, DEPUTY SUPERINTENDENT               :          **OPINION AND ORDER**
VELEZ, ANTHONY ANNUCCI, CO GRANT-           :
HALL, LT. BODGE, DSA A. HELMS, IGPS Q.      :          22 CV 7638 (VB)
QUICK, SHU DIRECTOR ANTHONY                 :
RODRIGUEZ, FSA STASKO, and SORC             :
FOIL Y. CHEVEREZ,                           :
                              Defendants.   :
-------------------------------------------------------------x

Briccetti, J.:

Plaintiff Jerard (Gerald) Walker, proceeding pro se and in forma pauperis, brings this

action against defendants Department of Corrections and Community Supervision ("DOCCS")

Commissioner Anthony Annucci; Sing Sing Correctional Facility ("Sing Sing") Superintendent

Michael Capra; Deputy Superintendent of Programs Velez; Special Housing Unit ("SHU")

Director Anthony Rodriguez; and eight other Sing Sing employees sued as SORC Manuel, DSS

Thorpe, FSA Stasko, SORC FOIL Y. Cheverez, Lt. Bodge, DSA A. Helms, IGPS Q. Quick, and

CO Grant-Hall.[1]  As relevant to this motion, plaintiff asserts claims under 42 U.S.C. § 1983 for

violation of his First and Fourteenth Amendment rights.

---

[1]      Plaintiff incorrectly sued defendants Lt. Bodge as "Bosch" and CO Grant-Hall as "Grant-Hill."  (See Doc. #8).  The Court refers to them by their proper names, as set forth in defendants' memorandum of law.  (Doc. #33 at 1).

Now pending is defendants' partial motion to dismiss the amended complaint[2] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]  (Doc. #32).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and certain factual allegations in plaintiff's opposition and sur-reply, and draws all reasonable inferences in plaintiff's favor, as summarized below.[4]

---

[2]      Defendants do not move to dismiss the Eighth Amendment excessive force claim against defendant Grant-Hall.  Moreover, as discussed below (see footnote 8), liberally construing the amended complaint, plaintiff asserts a state law claim not addressed in defendants' motion. Accordingly, the Eighth Amendment claim and the state law claim shall proceed.

[3]      Although defendants invoke only Rule 12(b)(6) in their motion, their argument regarding suits against officers in their official capacities "is more appropriately characterized as a [motion for] dismissal under Rule 12(b)(1), as it [is] based on sovereign immunity."  Morabito v. New York, 803 F. App'x 463, 465 n.2 (2d Cir. 2020) (summary order).  However, the "distinction has no practical effect in this case because whether brought under either subdivision, the Court considers on this motion only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor."  Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022).

       Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

       Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[4]      In addition to the amended complaint, courts may consider a pro se plaintiff's other submissions, such as any opposition to a motion to dismiss, when "evaluating the legal sufficiency of a pro se plaintiff's claims."  See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).  However, new allegations in plaintiff's opposition are only considered to the extent they are consistent with those in the amended complaint.  Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 28, 2016); see also Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (Although "[a] pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers,

During the complained-of events, plaintiff was incarcerated at Sing Sing in Ossining, New York.

Plaintiff arrived at Sing Sing in August 2021.  Plaintiff alleges he was not issued a razor upon entry into the facility.  A "razor check" was conducted, and he was put in keeplock for not having one.  (Doc. #8 ("Am. Compl.") at ECF 8).[5]  The next day, he was issued an inmate misbehavior report, and he alleges no "LT checked on the situation," and that Bodge told him he would not be released because "that is what hearings are for."  (Id.)

After one week in keeplock, plaintiff was afforded a hearing where he proved he was never given a razor upon entry to Sing Sing.  Bodge told plaintiff he was "lucky to be off" and that he would "receive a razor upon entry into the block."  (Am. Compl. at ECF 8).  However, plaintiff alleges "that never happened."  (Id. at ECF 9).  The following weekend, plaintiff was put in keeplock for another week for not having a razor and then was released without a disciplinary hearing.

In October 2021, plaintiff was assigned a position as a mess hall worker.  Plaintiff alleges he worked every day from October 24 to November 7, 2021, at which time plaintiff alleges he was choked on the visiting room floor on video by CO Grant-Hill and given a fabricated misbehavior report accusing him of assaulting staff.  He says he was taken from the observation room to the SHU.  Plaintiff contends he proved his innocence of the charges in the misbehavior report during a hearing on November 17, 2021.  He allegedly returned to work the following day.

---

. . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.").

[5]      "ECF__" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Approximately three weeks later, plaintiff was told he had no money in his inmate account.  He alleges he investigated further and determined he was not paid at all for weeks of work and that, when he was paid, it was at a lesser rate than that to which he was entitled. Plaintiff alleges he brought his lack of pay to the attention of Stasko, Helms, and Manuel, including by filing a grievance, "and they then conspired to remove me from the mess hall" position in retaliation for filing grievances about his lack of pay.  (Am. Compl. at ECF 11).

Plaintiff alleges he was placed in the SHU from July 22 to August 26, 2022, without cause or due process.  At an August 5, 2022, hearing regarding his SHU confinement,[6] plaintiff alleges he was denied witness testimony, documentary evidence, and the opportunity to question the author of the misbehavior report.  He also alleges he was denied an impartial hearing officer, because his hearing officer, Manuel, told him at the outset of the hearing "to prepare for [his] appeal."  (Am. Compl. at ECF 12).  At the conclusion of the hearing, plaintiff was sanctioned to 165 days in SHU, loss of privileges, and loss of three months of good time.  Plaintiff stayed in SHU for approximately thirty-four days.

Between August 4 and August 26, 2022, plaintiff alleges he was not afforded sufficient time out of his cell, congregate programing time, nutritious food, work assignments, or his personal property.  Plaintiff also alleges he was restrained with handcuffs and shackles every time he was removed from his cell, and Thorpe, Capra, and Annucci were responsible for directing these constraints.  According to plaintiff, he "was never able to challenge the restraint." (Am. Compl. at ECF 14).  During this time, plaintiff also alleges Velez was responsible for his daily programming and services, but plaintiff was prevented "from the congregate practice of

---

[6]     While plaintiff does not specify the basis for this hearing in his amended complaint, his initial complaint states he was being disciplined for allegedly assaulting another prisoner on July 22, 2022.  (Doc. #1 at ECF 2).

[his] catholic faith."  (Id.).  Plaintiff asserts similarly situated inmates in other correctional

facilities are not deprived of their property or services, resulting in discrimination based on his

location.

Plaintiff alleges he "wrote numerous complaints and grievances and personally spoke

with the complete executive team about all my issues."  (Am. Compl. at ECF 10).  He also

alleges he wrote to the governor, defendant Annucci, and Letitia James, the New York State

Attorney General.  However, he alleges his requests "were not responded to at all sometimes and

never in a timely manner in violation of the law."  (Id.).  He further alleges defendant Cheverez

tried to force plaintiff to "sign off on [his] complaints and appeals."  (Id.).  Plaintiff also alleges

he was not afforded "a hearing on the facts and circumstances complained about 80 percent of

the time because the conspiracy was far reaching and all the defendants were actors involved."

(Id.).

**DISCUSSION**

I.      Standard of Review

A.      Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v.

Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011)).  "[F]ederal courts are courts of limited

jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution

or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d

56, 62 (2d Cir. 2009).  The party invoking the Court's jurisdiction bears the burden of

establishing jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should resolve the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of <u>pro se</u> litigants and interpret them "to raise the strongest arguments that they suggest." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a <u>pro se</u> plaintiff alleges civil rights violations. <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. <u>Id</u>.

II.     <u>Subject Matter Jurisdiction</u>

Defendants argue the Eleventh Amendment bars plaintiff's Section 1983 claims for damages against the individual defendants in their official capacities, and thus, the Court lacks subject matter jurisdiction over these claims.

The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." <u>Gollomp v. Spitzer</u>, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." <u>Id</u>. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. <u>Trotman v. Palisades Interstate Park Comm'n</u>, 557 F.2d 35, 40 (2d Cir. 1977). Nonetheless, state officials can still be subject to suit in their official capacities for injunctive or other prospective relief. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not

treated as actions against the State.")  To seek injunctive relief against state officials in their official capacities, a plaintiff must "allege an ongoing violation of federal law."  In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

Here, plaintiff seeks monetary damages against all defendants and injunctive relief against defendant Annucci in his official capacity "forcing [him] to enforce the Halt legislation in Sing Sing . . . and to follow his own rules and regulations."  (Am. Compl. at ECF 15).  Plaintiff also seeks the termination of employment of every defendant.

The Eleventh Amendment bars plaintiff's claims for money damages against all defendants because plaintiff's claims for damages concern only acts taken in their official capacities.  Moreover, because all of the events alleged in the amended complaint describe only past acts, plaintiff has failed to allege an ongoing violation of federal law.

Accordingly, plaintiff's claims for monetary damages and injunctive relief against defendants in their official capacities must be dismissed.

III.    Failure to State a Claim

The Court liberally construes the amended complaint and opposition to assert Section 1983 claims for:  (i) First Amendment retaliation, (ii) First Amendment free exercise of religion, (iii) Fourteenth Amendment procedural due process, (iv) Fourteenth Amendment equal protection, and (v) Section 1983 conspiracy.

A.    Personal Involvement of Certain Defendants

Defendants argue plaintiff fails to state a claim against defendants Annucci, Rodriguez, Capra, and Thorpe in their personal capacities because plaintiff has not alleged facts sufficient to show these defendants were personally involved in any purported constitutional violation.

The Court agrees.

8

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  "Direct participation" includes "a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect'—such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself."  Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).  However, a defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. See Tangreti v. Bachmann, 983 F.3d 609, 619–20 (2d Cir. 2020).

Here, plaintiff alleges Annucci, Capra, Rodriguez, and Thorpe failed to enforce the HALT Act.[7]  More specifically, plaintiff alleges:  (i) Annucci "personally promot[ed] practices" that resulted in the alleged constitutional violations (Am. Compl. at ECF 3); (ii) Capra knew plaintiff was unlawfully confined in violation of the HALT Act because plaintiff spoke to Capra "face to face," but Capra did not take any corrective action (id. at ECF 14); (iii) Rodriguez failed to ensure the HALT Act was "adhered to in Sing Sing" (id. at ECF 3); and (iv) Thorpe was "responsible for directing plaintiff to be cuffed" (id. at ECF 14).[8]

---

[7]     The Humane Alternatives to Long-Term Solitary Confinement Act (the "HALT Act"), a New York state law that took effect on March 31, 2022, amends New York Correction Law § 137 to, among other things, limit the use of segregated confinement for all incarcerated persons to fifteen consecutive days.

[8]     Liberally construed, the amended complaint alleges a violation of the HALT Act against Velez.  (See Am. Compl. at ECF 13–14 (alleging Velez was "responsible for affording plaintiff daily programming," but plaintiff was "never" afforded seven hours of daily out-of-cell time as required under N.Y. Correct. Law § 137(6)(j)(ii)); see also Doc. #40 at ECF 3–4).  However,

These vague statements regarding policy enforcement, without more, are insufficient to show direct personal involvement in any alleged constitutional violations.  See Ford v. Aramark, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official when complaint "lack[ed] any non-conclusory allegation" about that official's personal involvement in any constitutional violation).  And a bare allegation of the failure to follow a state law or prison regulation does not constitute personal involvement in a violation of federal constitutional standards.  See Colon v. Annucci, 344 F. Supp. 3d 612, 636 n.14 (S.D.N.Y. 2018).  Plaintiff must also allege more than "that the defendants generally failed to remedy the alleged constitutional deprivation."  Colon v. Zydell, 635 F. Supp. 2d 264, 266 (W.D.N.Y. 2009).  As currently stated, plaintiff fails to put forth sufficient allegations plausibly to plead the personal involvement of Annucci, Capra, Rodriguez, and Thorpe in any constitutional violation.

Accordingly, the claims against Annucci, Capra, Rodriguez, and Thorpe must be dismissed for lack of personal involvement.[9]

B.      First Amendment Retaliation Claim

Defendants argue plaintiff fails to state a First Amendment retaliation claim against defendants Manuel, Helms, and Stasko for conspiring to take away plaintiff's work assignment in retaliation for complaints regarding his pay.

---

defendants do not move to dismiss plaintiff's HALT Act claim against Velez.  Accordingly, this claim may proceed.

[9]      Although plaintiff alleges defendant Rodriguez was personally involved in denying his "Tier III Appeal" (Am. Compl. at ECF 3), this allegation does not plausibly allege Rodriguez was personally involved in violating plaintiff's procedural due process rights.  That is, plaintiff has alleged he received a hearing, and then appealed the outcome of that hearing, whereupon defendant Rodriguez denied his appeal.  When the government deprives a plaintiff of some interest pursuant to an established procedure, due process is generally satisfied so long as some form of hearing is provided before a plaintiff is finally deprived of such interest.  See Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011).

The Court agrees.

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." Bartley v. Collins, 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006) (citing Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)).  To state a First Amendment retaliation claim, plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . defendant took adverse action against . . . plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015); see also Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.").  Accordingly, First Amendment retaliation claims must be "supported by specific and detailed factual allegations" and may not be stated "in wholly conclusory terms." Dolan v. Connolly, 794 F.3d at 295.

Here, plaintiff alleges he "wrote numerous complaints and grievances . . . about all my issues" before the alleged "overt retaliation began." (Am. Compl. at ECF 10, 12).  More specifically, plaintiff alleges Manuel retaliated against him by "making a predetermination of guilt" at a disciplinary hearing. (Id. at ECF 4).  Plaintiff also alleges Helms "retaliate[d] against me for seeking redress" and Stasko retaliated by having him "removed from Program" and "terminated . . . from the messhall." (Id. at ECF 4, 5).

11

A prisoner engages in constitutionally protected activity when he challenges prison conditions by filing a complaint or grievance.  See Dolan v. Connolly, 794 F.3d at 294.  The alleged retaliatory actions, if causally related to plaintiff's protected speech, could plausibly state a retaliation claim.  However, plaintiff alleges no facts supporting his allegations that these specific acts were retaliation for his complaints or grievances.  Therefore, plaintiff fails to plead a causal connection between any of the protected speech and these alleged adverse actions.  See Salahuddin v. Mead, 2002 WL 1968329, *6 (S.D.N.Y. Aug. 26, 2002) (finding bare allegations that a former grievance brought about the latter alleged retaliatory act are "wholly conclusory" and fail to state a claim).

Accordingly, plaintiff's First Amendment retaliation claim must be dismissed.

C.      First Amendment Free Exercise Claim

Defendants argue plaintiff fails to state a First Amendment free exercise claim against defendant Velez because plaintiff does not allege the requisite burden to his religious beliefs.

The Court agrees.

The First Amendment's free exercise guarantee applies to state actors through the Fourteenth Amendment.  Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  Placement in keeplock does not eliminate this right.  Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).  To state a free exercise claim, plaintiff must allege that "a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable."  Kravitz v. Purcell, 87 F.4th 111, 127 (2d Cir. 2023).

An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d at 308.  Corrections facilities may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349.  Institutional security is one such interest.  Ross v. Coughlin, 669 F. Supp. 1235, 1239 (S.D.N.Y. 1987).

Here, plaintiff alleges Velez denied him "any religious services from 8/5/22 to 8/26/22 without reason and prevented [him] from the congregate practice of [his] Catholic faith."  (Am. Compl. at ECF 14).  Even assuming plaintiff has alleged his religious beliefs are sincerely held, this allegation, without more, is insufficient to establish a burden on plaintiff's free exercise of religion because plaintiff fails to allege the missed congregate services interfered with those sincerely held religious beliefs.  Cf. Kravitz v. Purcell, 87 F.4th at 128 (finding prisoner who was unable to observe a religious holiday due to corrections officers' conduct had shown a burden on his sincere religious beliefs).

Accordingly, plaintiff's First Amendment free exercise claim against Velez must be dismissed.  However, this claim is dismissed without prejudice so plaintiff may attempt to allege additional facts describing his sincerely held religious beliefs and how missing the services burdened those beliefs.

D.     Fourteenth Amendment Procedural Due Process Claim

Defendants argue plaintiff fails to state a procedural due process claim against defendants Manuel, Bodge, Cheverez, Quick, Helms, and Stasko because plaintiff fails to plead he was deprived of a protected liberty interest.

The Court agrees.

1.    Legal Standard

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To state a procedural due process claim, plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process."  Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017).

To determine whether a disciplinary action violates plaintiff's protected liberty interest, this Court must consider whether the "discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009).  Specifically, the Court should weigh "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the "duration of the disciplinary segregation compared to discretionary confinement."  Id.  Recognizing that an unusually long SHU sentence can by itself constitute an "atypical and significant hardship," the Second Circuit has also ruled that shorter SHU confinements, i.e., less than 101 days, can still qualify as an "atypical and significant hardship" where "the conditions were more severe than the normal SHU conditions."  Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004).

Even if an inmate's liberty interest is implicated, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, the full panoply of rights due a defendant in such proceedings does not apply."  Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order).  The procedural due process afforded a prisoner charged with a violation in a disciplinary proceeding consists of:  "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition,

including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974)).  The Second Circuit has emphasized that in the context of disciplinary hearings, "the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in Wolff."  Williams v. Menifee, 331 F. App'x at 60.

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safely or correctional goals."  Wolff v. McDonnell, 418 U.S. at 566.  However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority," or because of "irrelevance, lack of necessity, or the hazards presented in individual cases."  Id.

    2.   Analysis

Here, liberally construing the amended complaint, plaintiff alleges he was denied his right to procedural due process on three occasions:  (i) an August 2021 disciplinary hearing for not having a razor, (ii) an August 5, 2022, disciplinary hearing at which he was denied witness testimony and the presentation of evidence, and (iii) the removal of plaintiff from his mess hall position and delayed payment of earned wages without a hearing.

First, plaintiff alleges he was subject to disciplinary action because Bodge twice failed to provide him a razor.  Plaintiff alleges he was held in keeplock approximately one week before he attended a disciplinary hearing when it was determined he was never issued a razor upon his arrival at Sing Sing.  Then, after plaintiff's release from keeplock, he was still not issued a razor and was confined again for approximately another week without the opportunity for a

disciplinary hearing.  But even liberally construing the amended complaint, plaintiff fails to allege he was deprived a liberty interest with respect to this incident.  Plaintiff alleges he spent approximately two weeks total in keeplock and does not allege his conditions of confinement were atypical or a significant hardship as compared to "the ordinary incidents of prison life."  Davis v. Barrett, 576 F.3d at 133.  Thus, plaintiff fails to state a due process claim based on the August 2021 disciplinary hearing.

Second, plaintiff alleges Manuel violated his due process rights at an August 5, 2022, disciplinary hearing by denying his requests for witness testimony and presentation of documentary evidence and prejudging the matter by telling plaintiff at the outset "to prepare for [his] appeal."  (Am. Compl. at ECF 12).  Plaintiff was sanctioned to 165 days of SHU confinement, loss of privileges, and loss of three months of good time credits.  Notwithstanding the 165-day SHU confinement sanction, plaintiff alleges he was only "kept in SHU for [approximately] 34 days."  (Id. at ECF 13).

A relatively short SHU confinement without allegations of significant hardship is insufficient to plausibly plead deprivation of a liberty interest.  See Smart v. Annucci, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (finding no liberty interest in forty days SHU confinement when plaintiff did not allege harsher than normal SHU conditions).  Inmates may, however, "have a liberty interest in good time credit they have already earned," although "no such interest exists in the opportunity to earn good time credit."  Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000).  It is unclear based on plaintiff's allegations whether "3 months loss of good time" (Am. Compl. at ECF 13) refers to credit he had already earned or the opportunity to earn credit in the future.  Thus, plaintiff fails to state a claim based on these allegations, but plaintiff will have the opportunity to allege additional facts regarding this liberty interest,

clarifying whether, as a result of the August 5, 2022, hearing, he had three months of good time credit that he had already earned taken away or merely lost the ability to earn it.[10]

Third, plaintiff alleges Stasko, Helms, and Manuel removed him from his mess hall position and denied him timely access to his earned wages without a hearing.  However, plaintiff does not have a Fourteenth Amendment liberty or property interest in prison work assignments or timely pay.  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (affirming dismissal of due process claim for failure to plead a liberty or property interest and holding "New York law does not give a prisoner any statutory, regulatory or precedential right to his prison job"); Allen v. Cuomo, 100 F.3d 253, 261–62 (2d Cir. 1996) ("Without statutory or contractual authority, there is no property interest in prompt payment.").  Thus, plaintiff fails to state a due process claim based on these allegations.[11]

Accordingly, plaintiff's Fourteenth Amendment due process claim must be dismissed.  However, this claim is dismissed without prejudice so plaintiff may attempt to allege additional

---

[10]     If plaintiff is able to plead additional facts alleging he was deprived of a liberty interest, plaintiff has otherwise sufficiently alleged the August 5, 2022, disciplinary hearing did not afford him a reasonable opportunity to call witnesses and present evidence in violation of his due process rights.  See Sira v. Morton, 380 F.3d at 69.

[11]     In connection with these allegations, plaintiff mentions that he "Foiled" certain receipts and records related to his mess hall job.  (Am. Compl. at ECF 12).  To the extent plaintiff alleges a due process violation with respect to these alleged New York Freedom of Information Law ("FOIL") requests, he fails to allege an actionable liberty or property interest.  See Blount v. Brown, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) ("As several courts in th[is] Circuit have held, a plaintiff has no property interest in obtaining FOIL documents.").  To the extent plaintiff attempts to bring an independent state law claim against Cheverez under FOIL (see Am. Compl. at ECF 10), this Court lacks jurisdiction to adjudicate that claim, and it must be dismissed.  See Jackson v. Wilcox, 2023 WL 2756489, at *4 (N.D.N.Y. Apr. 3, 2023) (collecting cases); Cammarata v. City Univ. of N.Y., 2019 WL 3859401, at *9 (E.D.N.Y. Aug. 15, 2019) ("Federal courts, however, do not have jurisdiction to enforce state laws granting public access to official state records.").

facts describing in more detail his loss of good time credit in connection with the August 5,

2022, disciplinary proceeding conducted by Manuel.

     E.     <u>Fourteenth Amendment Equal Protection Claim</u>

Defendants argue plaintiff fails to state an equal protection claim because plaintiff fails to

allege disparate treatment based on a protected class or "class-of-one" theory.[12]

The Court agrees.

Although "the Equal Protection Clause is most commonly used to bring claims alleging

discrimination based on membership in a protected class," a plaintiff who does not allege

membership in a protected class may, nonetheless, bring a "class of one" equal protection claim.

<u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005), <u>overruled on other grounds by</u> <u>Appel v.</u>

<u>Spiridon</u>, 531 F.3d 138 (2d Cir. 2008).  Here, plaintiff does not allege differential treatment

based on his membership in a protected class, such as race or religion; instead, he alleges

differential treatment based on his location at Sing Sing.  Accordingly, the Court considers

whether plaintiff has stated a class-of-one equal protection claim.

"A class-of-one claim exists where the plaintiff alleges that she has been intentionally

treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." <u>Analytical Diagnostic Labs, Inc. v. Kusel</u>, 626 F.3d 135, 140 (2d Cir.

2010).  To state a claim, plaintiff must identify at least one individual with whom he can be

compared.  <u>King v. N.Y. State Div. of Parole</u>, 260 Fed. App'x 375, 380 (2d Cir. 2008) (summary

order) (affirming dismissal of claim because plaintiff "failed to identify a single individual with

whom he can be compared for Equal Protection purposes").  "Class-of-one plaintiffs must show

---

[12]     Because plaintiff fails to specify against which defendants he brings this claim, the Court
liberally construes this claim to be brought against all defendants.

an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010). "Because of the particular posture of a class of one claim, the comparator's circumstances must be prima facie identical." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). The comparison to similarly situated individuals should "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate government policy that an improper purpose—whether personal or otherwise—is all but certain." Neilson v. D'Angelis, 409 F.3d at 105. "It is well established that this pleading standard is demanding." Hampshire Recreation, LLC v. Vill. of Mamaroneck, 2016 WL 1181727, at *6 (S.D.N.Y. Mar. 25, 2016).

Moreover, "[t]he disparity in treatment must survive the appropriate level of judicial scrutiny which, in the context of a prison, is that the difference in treatment was not reasonably related to any legitimate penological interests." Reynolds v. Quiros, 990 F.3d 286, 300 (2d Cir. 2021).

Plaintiff's allegation that he was denied "property and services" that similarly situated prisoners in other facilities such as "5 points c.f., cayuga, [and] comstock" receive is plainly insufficient to state an equal protection claim. (Am. Compl. at ECF 14–15). The Court cannot reasonably infer based on the facts alleged that plaintiff was treated differently from similarly situated inmates at the other correctional facilities he identified. Ruggiero v. Fischer, 807 F. App'x 70, 74 (2d Cir. 2020) (summary order) (affirming dismissal of class-of-one equal protection claim at summary judgment when plaintiff claimed he was restrained differently than inmates placed in SHU at other correctional facilities, because plaintiff "did not attempt to identify a specific comparator" and "pointed only to the different regulations governing" his

facility and others).  The amended complaint's conclusory reference to prisoners in other

facilities does not suggest "an extremely high degree of similarity" between plaintiff and these

other prisoners.  Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d at 59.

Accordingly, plaintiff's Fourteenth Amendment equal protection claim must be

dismissed.

F.      Section 1983 Conspiracy Claim

Defendants argue plaintiff fails to state a conspiracy claim under Section 1983 because

plaintiff's allegations are vague and conclusory, and plaintiff fails to allege an underlying

constitutional violation perpetuated by the conspiracy.

The Court agrees.

To state a Section 1983 conspiracy claim, a plaintiff must allege:  "(1) an agreement

between two or more state actors or between a state actor and a private entity; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Although "a

plaintiff is not required to list the place and date of defendants' meetings and the summary of

their conversations when he pleads conspiracy the pleadings must present facts tending to show

agreement and concerted action."  Concepcion v. City of New York, 2008 WL 2020363, at *3

(S.D.N.Y. May 7, 2008).  "[C]onclusory allegations of a § 1983 conspiracy are insufficient."

Pangburn v. Culbertson, 200 F.3d at 72.

Further, "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy

to violate such right."  Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).  If a

plaintiff fails to plead an underlying constitutional violation on which to base a Section 1983

conspiracy claim, the conspiracy claim fails as a matter of law.  See AK Tournament Play, Inc. v.

20

<u>Town of Wallkill</u>, 2011 WL 197216, at *3–4 (S.D.N.Y. Jan. 19, 2011), <u>aff'd</u>, 444 F. App'x 475 (2d Cir. 2011) (summary order).

As discussed above, the amended complaint, as currently stated, fails to state a claim for any constitutional violation, which necessitates dismissal of plaintiff's Section 1983 conspiracy claim as well.  And even if plaintiff had stated a claim for a constitutional violation, all of plaintiff's allegations regarding the purported conspiratorial conduct are conclusory.  Plaintiff alleges all of the defendants conspired in one way or another with someone else without further factual supporting allegations of what actions such defendants took in furtherance of the conspiracy, which is insufficient as a matter of law to state a claim for Section 1983 conspiracy. <u>See</u> <u>Corsini v. Condé Nast</u>, 613 F. App'x 1, 3 (2d Cir. 2015) (summary order).  And plaintiff has not provided any "factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effect of the conspiracy." <u>Adams v. City of New York</u>, 2023 WL 2734611, at *6 (E.D.N.Y. Mar. 31, 2023).

Accordingly, plaintiff's Section 1983 conspiracy claim must be dismissed.

IV.    <u>Leave to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to <u>pro se</u> litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." <u>Matima v. Celli</u>, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [<u>pro se</u> complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be

stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).  But "a futile request to replead should be denied."  <u>Id.</u>

Here, the amended complaint, liberally construed, contains enough allegations suggesting plaintiff <u>potentially</u> has:  (i) a First Amendment free exercise claim against Velez in her individual capacity arising from the alleged denial of his ability to attend religious services from August 5 to August 26, 2022; and (ii) a Fourteenth Amendment procedural due process claim against Manuel in her individual capacity arising from the August 5, 2022, disciplinary hearing, that plaintiff has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe."  <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.

Accordingly, the Court grants plaintiff leave to file a second amended complaint respecting these two claims, **<u>only</u>**.

**The second amended complaint will completely replace, not merely supplement, the amended complaint.**  Therefore, plaintiff must include in the second amended complaint all information necessary for these claims as well as the claims that defendants did not move to dismiss, including all relevant allegations from the amended complaint, opposition, and sur-reply to defendants' motion.

## CONCLUSION

The motion is GRANTED.

All of plaintiff's claims addressed in this motion are dismissed.  Plaintiff's Eighth Amendment excessive force claim against defendant Grant-Hall and plaintiff's HALT Act claim against defendant Velez, which were not addressed by defendants' motion, will proceed.

Additionally, plaintiff is granted leave to amend his amended complaint in accordance with the instructions above.  By February 2, 2024, plaintiff shall file a second amended

complaint using the attached form.  If plaintiff fails to file a second amended complaint by February 2, 2024, the Court will deem the amended complaint the operative complaint, and only the Eighth Amendment excessive force claim against defendant Grant-Hall and the HALT Act claim against defendant Velez will proceed.

The deadline for defendants Grant-Hall and Velez to file an answer to the amended complaint is STAYED pending plaintiff's deadline to file a second amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate defendants Capra, Thorpe, Annucci, Bodge, Helms, Quick, Rodriguez, Stasko, and Cheverez from this case and terminate the motion.  (Doc. #32).

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited, to plaintiff at the address on the docket.

Dated: January 2, 2024
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge