UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JERARD (GERALD) WALKER,
              Plaintiff,

v.

DEPUTY SUPERINTENDENT VELEZ and
CORRECTION OFFICER GRANT-HALL,
              Defendants.
-----------------------------------------------------------x

**OPINION AND ORDER**

22 CV 7638 (VB)

Briccetti, J.:

      Plaintiff Jerard (Gerald) Walker, proceeding pro se and in forma pauperis, brings this action against defendants Deputy Superintendent of Program Services Velez and Correction Officer Grant-Hall, employees of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility, located in Ossining, New York ("Sing Sing"). Plaintiff alleges that, on November 8, 2021, Grant-Hall used a chokehold against him, which constituted excessive force in violation of the Eighth Amendment. In addition, plaintiff alleges Velez directed him to be held for an excessive period of time in the special-housing unit ("SHU), in violation of the New York State Humane Alternatives to Long-Term Solitary Confinement Act (the "HALT Act"). Liberally construed, plaintiff also alleges Velez directed him to be confined in the SHU for an excessive period of time, in violation of the Fourteenth Amendment, and denied him access to prison programming, in violation of the Eighth Amendment.

      Pending are (i) defendants' motion for summary judgment (Doc. #73), and (ii) plaintiff's cross-motion for summary judgment (Doc. #84).

1

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART, and plaintiff's cross-motion is DENIED.  Plaintiff's HALT Act claim against Velez is dismissed.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

## BACKGROUND

Defendants have submitted memoranda of law, a statement of material facts pursuant to Local Civil Rule 56.1, and a declaration with exhibits, including video recordings of the November 8, 2021, altercation.  Plaintiff has submitted memoranda of law with an incorporated statement of material facts and a collection of documents.  Together, these submissions reflect the following factual background.

I.      Visiting Room Altercation

During the events at issue, plaintiff was incarcerated at Sing Sing.  On November 8, 2021, plaintiff received a visitor, Naeemah Pryor, in the facility's visiting room.  Plaintiff and Pryor sat across a table from each other.  Per Sing Sing policy, an officer was assigned to monitor the surveillance camera feeds of the visiting room and look for exchanges of contraband.  That officer observed Pryor place an unknown item into an open Doritos bag and pass the bag to plaintiff.  The observing officer contacted Grant-Hall, who was on duty in the visiting room, informed her of his observations, and directed her to plaintiff's table.  Video cameras in the visiting room captured Grant-Hall's interaction with plaintiff and the ensuing confrontation.

Grant-Hall approached plaintiff and demanded the Doritos bag, but plaintiff refused.  Grant-Hall then attempted to grab the bag from plaintiff's hands.  Plaintiff held on to the bag and pulled it away from Grant-Hall.  Grant-Hall walked to the other side of plaintiff and again tried

to grab the bag, but plaintiff continued to resist. While attempting to take the bag with one hand, Grant-Hall briefly wrapped her other arm around plaintiff's neck.

The altercation escalated as plaintiff stood up and Grant-Hall wrapped her arms around plaintiff's neck for roughly two seconds. Both standing, the two grappled as Grant-Hall continued to place her arms around plaintiff's neck and chest while plaintiff clutched the bag to his midsection. Within seconds, another correction officer appeared, and both officers put their arms around plaintiff's torso and forced plaintiff to bend over another table. At this point, the parties' backs were to the camera, and it is unclear exactly where Grant-Hall placed her arms and hands on plaintiff. Several other correction officers joined the altercation and tried to force plaintiff to the ground. As each officer took a different position around plaintiff's body, Grant-Hall continued to reach for plaintiff's head and chest.

At this point in the video recordings, the view of Grant-Hall and plaintiff was obstructed by the other officers as they attempted to restrain plaintiff. Soon thereafter, Grant-Hall disengaged while the officers forced plaintiff to the ground. Grant-Hall's struggle with plaintiff escalated and ended in quick succession: she disengaged from plaintiff approximately 33 seconds after first attempting to grab the Doritos bag. As Grant-Hall removed herself from plaintiff, the other officers rolled plaintiff over to a prone position and handcuffed him. Shortly thereafter, the other officers lifted plaintiff off the ground and carried him out of view of the cameras.

According to plaintiff, Grant-Hall "jumped on [his] neck" and "back" and "assaulted [him]" by putting him in a "choke hold." (Doc. #75-1 ("P. Dep.") at Tr. 40–41, 53). He admits to attempting to smuggle contraband into Sing Sing and refusing Grant-Hall's demand to give her the contraband, but contends Grant-Hall's use of a chokehold against him constituted

3

excessive force.  Plaintiff asserts he was "not hurt seriously" but he "was injured" and his "back and neck was hurt."  (Doc. #84 at ECF 34).

Grant-Hall denies using a chokehold on plaintiff.  Rather, she asserts plaintiff "attempted to conceal the contraband in his pants," and so she used a "body hold" to "prevent Plaintiff from using his arms to conceal the contraband in his pants."  (Doc. #75-4 ("Grant-Hall Decl.") at ¶ 17).

II.     SHU Detention

On July 22, 2022, plaintiff was involved in a fight with another inmate at Sing Sing.  Plaintiff was issued a misbehavior report and placed in the Special Housing Unit ("SHU") at Sing Sing from approximately July 22 through August 26, 2022.  At an official disciplinary hearing, plaintiff was found guilty of several infractions; he later appealed that finding, but his appeal was denied.  Velez, the deputy superintendent of program services at Sing Sing, was not involved in plaintiff's disciplinary proceedings.  On or around August 26, plaintiff was released from the SHU at Sing Sing and transferred to Upstate Correctional Facility in Franklin, NY.

During his time in the SHU at Sing Sing, plaintiff alleges he never received "credit and books for program" activities, despite Velez telling him he would.  (Doc. #84 at ECF 6).  Plaintiff alleges Velez was responsible for his lack of "individual assessment . . . core programming or any form of educational opportunity."  (Doc. #84 at ECF 6, 9).  Plaintiff also alleges Velez was responsible for plaintiff's stay in the SHU for over 30 days.  Velez asserts she was not involved in plaintiff's stay in the SHU because she had no part in the disciplinary process—she did not author the misbehavior report, participate in the disciplinary hearing, or decide the appeal.  Velez

also asserts plaintiff was afforded daily programming and recreation options while in the SHU, which she contends is reflected in the SHU records.

## DISCUSSION

I.  Summary Judgment Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact, and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). [1]

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. Id. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for" the non-moving party. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

If a moving party offers video evidence "whose accuracy is unchallenged" in support of a motion for summary judgment, such evidence "should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007). That said, "if the video evidence does not conclusively resolve material fact issues, summary judgment based on that evidence alone is not appropriate." Alvear v. Kamel, 2023 WL 5593914, at *2 (E.D.N.Y. Aug. 29, 2023).[2]

In general, the Court may not evaluate the credibility of witness testimony on summary judgment; this assessment is exclusively the province of the jury. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).

---

[2]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).

II.  Analysis

   A.  Excessive Force Claim Against Grant-Hall

Defendants argue the testimony and video evidence demonstrate that Grant-Hall did not, as a matter of law, use excessive force against plaintiff during the altercation on November 8, 2021.  Plaintiff counters that the video evidence is dispositive in his favor.

The Court disagrees.

   1.  Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to protect prison inmates' right to be free from the use of excessive physical force by prison officials. Whitley v. Albers, 475 U.S. 312, 320–21 (1986).  To prove an excessive force claim, a plaintiff must establish an objective component and a subjective component. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009).

To establish the objective component, a plaintiff must show "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  In determining whether conduct was objectively "harmful enough," courts must consider the harm done in light of "contemporary standards of decency." Id.  "[W]hen prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" Id. at 268–69 (quoting Hudson v. McMillian, 503 U.S. at 9).

7

To establish the subjective component of an excessive-force claim, a plaintiff must show "the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Wright v. Goord, 554 F.3d at 268. "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003). "To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Id.

2. Application

Here, it is genuinely disputed whether Grant-Hall used excessive force against plaintiff.

As a threshold matter, it is undisputed that plaintiff attempted to smuggle contraband into the facility, and that he resisted Grant-Hall's efforts to confiscate the contraband. Therefore, the relevant inquiry is not whether physical force was justified at all. Rather, the relevant inquiry is two-fold: (i) what level of force did Grant-Hall use, and (ii) whether that force was objectively harmful and disproportionate to the interests of maintaining discipline and enforcing facility policy. Such questions implicate triable issues of fact and cannot be resolved at summary judgment.

To start, the parties present divergent accounts of the facts at issue, all of which go to the heart of plaintiff's claim. Plaintiff asserts Grant-Hall's use of force against him was disproportionate to the situation. He testified Grant-Hall "jumped on [his back] and put [him] in

a choke hold." (P. Dep. Tr. at 39). Grant-Hall denies putting plaintiff in a chokehold. She insists she used only a "body hold" in an attempt to retrieve the contraband and prevent plaintiff from hiding it in his pants. (Grant-Hall Decl. at ¶¶ 17, 20). She contends her use of force was legitimate and proportional to the need to restore order.

At summary judgment, the Court cannot credit the testimony of Grant-Hall over plaintiff, or vice versa; nor can it determine the credibility of either witness. Fincher v. Depository Tr. & Clearing Corp., 604 F.3d at 725–26.

Contrary to the parties' arguments, the video evidence is simply not clear enough to warrant summary judgment. Although probative to a degree, the video evidence does not resolve several material factual disputes. For example, it does not show whether plaintiff attempted to hide the contraband in his pants—which would affect a rational jury's determination as to whether Grant Hall's use of force was justified. Nor does the video evidence clearly capture the altercation between plaintiff and Grant-Hall. The video evidence shows that, at several points while Grant-Hall and plaintiff grappled, she placed her arms around his neck and chest area. But the video recordings do not show exactly where Grant-Hall grabbed plaintiff, or for how long; indeed, her and plaintiff's backs were to the camera for several seconds of the altercation. Once the other correction officers joined the fray, they blocked the cameras' views of Grant-Hall, although she remained near plaintiff's head and neck.

As such, the video evidence "does not conclusively resolve material fact issues." Alvear v. Kamel, 2023 WL 5593914 at *2. Nor does it "utterly discredit[]" one party's testimony. Zellner v. Summerlin, 494 F.3d at 371. Therefore, the video evidence does not compel the granting of summary judgment for either side.

At bottom, the partially-unclear video evidence and the parties' competing narratives create questions of fact that are central to plaintiff's claim. Thus, whether Grant-Hall choked plaintiff; whether her use of force was objectively harmful; and whether she used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" are questions for a jury to decide. Scott v. Coughlin, 344 F.3d at 291.

### 3. Qualified Immunity

Defendants also argue the Eighth Amendment excessive force claim against Grant-Hall should be dismissed on the basis of qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail." Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003).

Here, as discussed above, there is a genuine factual dispute concerning whether Grant-Hall used excessive force against plaintiff. Plaintiff's Eighth Amendment right to be free from the use of excessive force was clearly established at the time of the allegedly unlawful conduct, and it would not have been objectively reasonable for Grant-Hall to have believed she could

10

lawfully violate that right by using force against plaintiff beyond what was necessary to restrain him and restore order.

Accordingly, factual issues preclude summary judgment in favor of Grant-Hall on the basis of qualified immunity.

Because the record contains multiple triable issues of fact, neither party is entitled to summary judgment on plaintiff's excessive force claim against Grant Hall.

B.    HALT Act Claim against Velez

Plaintiff claims Velez violated the HALT Act when he was in the SHU for over thirty days.

The HALT Act is a New York state law that took effect on March 31, 2022. As relevant here, it amends New York Correction Law § 137 to limit the use of segregated confinement for all incarcerated persons to a maximum of fifteen consecutive days. See N.Y. CORR. LAW § 137.

However, Section 137 does not create a private right of action. See Correa v. Lynch, 2021 WL 2036697, at *8 (S.D.N.Y. May 20, 2021); see also Montes v. Albany County, 2024 WL 4562543, at *2 (N.D.N.Y. Oct. 24, 2024). As such, plaintiff cannot advance an independent claim predicated solely on the HALT Act, and this claim must be dismissed.

C.    SHU Confinement Claim Against Velez

Liberally construing plaintiff's briefing, the Court understands plaintiff to make a Fourteenth Amendment claim against Velez, separate from a HALT Act claim. Under this liberal construction, plaintiff claims pursuant to 42 U.S.C. § 1983 that Velez violated his Fourteenth Amendment right to due process by confining him in the SHU at Sing Sing for an excessive period of time. Defendants argue this claim fails because Velez was not personally involved in plaintiff's confinement in the SHU.

11

The Court agrees.

### 1. Legal Standard

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013), abrogated on other grounds by Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017). In other words, to survive summary judgment, a plaintiff must present evidence "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

In addition, the Fourteenth Amendment requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010). Thus, to establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

### 2. Application

Here, no facts in the record show that Velez was involved in plaintiff's confinement to the SHU.

Plaintiff alleges Velez was responsible for his confinement to the SHU for over thirty days. According to plaintiff, Velez's involvement derived from her responsibility for programming and activities. Beyond conclusory assertions that Velez was responsible for

plaintiff's confinement in the SHU, plaintiff provides no specific details as to how Velez was involved in the length of his SHU confinement.

The record confirms Velez's assertion that she played no role in plaintiff's SHU confinement. Specifically, the records from the Sing Sing disciplinary process demonstrate that Velez did not issue the misbehavior report, hold the disciplinary hearing, confine plaintiff to the SHU, or hear the appeal. Plaintiff provides no evidence to contradict those facts.

Affording this pro se plaintiff "special solicitude," and liberally construing his submissions, interpreting them "to raise the strongest arguments that they suggest," plaintiff attempts to construct a theory of supervisory liability because of Velez's managerial control over programming. Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam). However, the mere fact of occupying a supervisory position cannot establish liability for federal constitutional violations unless plaintiff shows personal involvement. See Tangreti v. Bachmann, 983 F.3d at 618.

Moreover, even if Velez was involved in plaintiff's disciplinary proceedings, plaintiff's SHU confinement of approximately 34 days does not constitute a constitutional violation. A "relatively brief" SHU confinement without allegations of significant hardship is insufficient to demonstrate a deprivation of a liberty interest. Smart v. Annucci, 2021 WL 260105, at *6 (S.D.N.Y. Jan. 26, 2021) (finding no liberty interest in forty days SHU confinement when plaintiff did not allege harsher than normal SHU conditions) (collecting cases). Here, plaintiff's SHU confinement was approximately thirty-five days. Therefore, even assuming Velez's

13

personal involvement, plaintiff's Fourteenth Amendment claim fails because he does not allege a deprivation of a liberty interest as a matter of law.

Because there is no genuine dispute of material fact regarding Velez's personal involvement in plaintiff's SHU confinement, summary judgment on plaintiff's Fourteenth Amendment claim is warranted. And, even if Velez were involved, plaintiff's relatively short confinement in the SHU does not constitute a constitutional violation, meaning Velez would be entitled to qualified immunity. See Salim v. Proulx, 93 F.3d at 89.

D. Denial of Programming Claim Against Velez

Liberally construed, plaintiff also alleges Velez violated his Eighth Amendment rights by failing to provide him with programming and recreation time while he was confined in the SHU at Sing Sing. Defendants argue plaintiff's Eighth Amendment claim against Velez cannot survive summary judgment because he does not allege facts sufficiently serious to constitute an Eighth Amendment violation.

The Court agrees.

1. Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Courts have construed the Eighth Amendment to protect a prison inmate's right to "conditions of confinement" that are "at least 'humane.'" Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

To prove a conditions-of-confinement claim, a plaintiff must satisfy both an objective and a subjective prong. Gaston v. Coughlin, 249 F.3d at 164. First, a plaintiff must show, objectively, the conditions of his confinement resulted in "unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." McCray v. Lee, 963 F.3d 110, 117 (2d Cir. 2020). To do so, a plaintiff must show the conditions

14

of confinement "pose an unreasonable risk of serious damage to his health," by depriving him of "basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).

Second, a plaintiff must establish the prison officials acted with "deliberate indifference" to the hazardous condition. Walker v. Schult, 717 F.3d at 125. "To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or safety." Id.

### 2. Application

Even accepting plaintiff's conclusory allegations as true, he does not claim deprivations sufficiently serious to constitute an Eighth Amendment violation as a matter of law.

Plaintiff alleges Velez denied him programming; specifically, she was "responsible for affording plaintiff daily programming" and she "failed to provide that essential service." (Am. Compl. at ECF 3, 13–14; Doc. #84 at ECF 6). Plaintiff asserts he "spoke to [Velez] during programming and she told [him that he] would receive credit and books for programs and [he] never did." (Doc. #84 at ECF 6). Plaintiff also alleges Velez denied him "therapeutic treatment, work programs and core programs." (Am. Compl. at 3). Plaintiff does not describe what "therapeutic treatment" is or the basis for his entitlement to it. (Id.)

Accepting as true plaintiff's conclusory assertions of programming denials, the alleged conduct does not amount to a deprivation sufficiently serious to satisfy the first prong of an Eighth Amendment claim. McCray v. Lee, 963 F.3d at 117. The opportunity to access programming does not implicate the conditions prisons are required to afford prisoners under the Eighth Amendment. Caimite v. Venettozzi, 2018 WL 6069458, at *8 (N.D.N.Y. Oct. 29, 2018), report and recommendation adopted, 2018 WL 6068414 (N.D.N.Y. Nov. 20, 2018) (finding

15

plaintiff did not allege "sufficiently serious" conditions of confinement when plaintiff claimed to have been "confined in [the] SHU for twenty-three hours a day with visitation restrictions and without access to educational and work programs, telephone, or commissary") (collecting cases).

Even assuming plaintiff alleged an objectively serious constitutional violation with his claims, there is no triable factual dispute on this issue. Velez disputes plaintiff's allegations and asserts that plaintiff was provided with frequent programming and recreation opportunities. The SHU records corroborate her position and show plaintiff was offered programming and recreation on a nearly daily basis during his SHU confinement at Sing Sing—and he frequently accepted those opportunities. Plaintiff provides no evidence to rebut the SHU records, meaning that there is no triable factual dispute on this claim.

Because plaintiff's assertions of a lack of programming and resources while in the SHU are not objectively serious, and there is no genuine factual dispute in any event, Velez is entitled to summary judgment as to plaintiff's Eighth Amendment claim against her. And even if the denial of programming and resources constituted a constitutional violation, Velez would be entitled to qualified immunity because the law does not clearly establish such a requirement. See Salim v. Proulx, 93 F.3d at 89.

## CONCLUSION

Defendants' motion is GRANTED IN PART and DENIED IN PART. The only claim that survives summary judgment is plaintiff's excessive force claim against Grant-Hall. All other claims, including the HALT Act claim against Velez, are dismissed.

Plaintiff's cross-motion is DENIED.

The Court will conduct a telephonic case management conference on September 24, 2025, at 10:00 a.m., at which time the parties shall be prepared to discuss, among other things,

16

the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, defense counsel is directed to contact plaintiff prior to that date to discuss settlement in good faith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions (Docs. ##73, 84), and terminate defendant Deputy Superintendent Velez from this case.

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited, to plaintiff at the address on the docket.

Dated: August 15, 2025
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge